IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Rodney David Young, | ) | |
| | ) | Civil Action No. 14-2247-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| South Carolina Dept. of Corrections; | ) | |
| Lt. Patrick; | ) | |
| Capt. Wright; | ) | |
| Ofc. Sabrina Risher; | ) | |
| Ofc. Jeffrey Masley; | ) | |
| Ms. Valerie Jackson; | ) | |
| Ms. J. Brown; Sgt. Green; and | ) | |
| Warden Leven Cohen | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Rodney David Young, proceeding pro se, brought this 42 U.S.C. § 1983 action against the defendants, South Carolina Department of Corrections et al, alleging that they deprived him of his constitutional rights. Pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2), D.S.C., this case was referred to a magistrate judge for all pre-trial proceedings. This case is now before the court on the magistrate judge's Report and Recommendation ("Report"), recommending the court to summarily dismiss all defendants without prejudice and without service. (ECF No. 8). Plaintiff filed objections to the Report.[1] (ECF No. 10). Accordingly, this matter is now ripe for review.

---

[1] Plaintiff's objections were due on July 7th. (ECF No. 8). His objections were dated July 8th. (ECF No. 10). Along with his objections, he filed a motion for excusable neglect (ECF No. 12) for filing his objections late, and a motion to amend his complaint (ECF No. 11) to add two additional Defendants who are allegedly responsible for the delay in his ability to file his objections (ECF No. 10, pp. 8-9). Given that the court is examining the merits of Plaintiff's objections, the court determines that the motions for excusable neglect and to amend his complaint are moot.

1

The Report has no presumptive weight and the responsibility to make a final determination in this matter remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). In making that determination, the court is charged with conducting a de novo review of those portions of the Report to which either party specifically objects. *See* 28 U.S.C. § 636(b)(1). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. *See id.*

Plaintiff objects to the portion of the magistrate judge's Report (ECF No. 8, pp. 4-5) that held that Plaintiff did not have a protected interest under the Due Process Clause. (ECF No. 10). Although Plaintiff concedes that his disciplinary conviction did not result in loss of any good-time credits, (ECF No. 10, p. 3), Plaintiff contests the Report's decision (ECF No. 8, p. 4) that his disciplinary conviction did not result in an atypical hardship. (ECF No. 10, p. 3).

The Due Process Clause can be implicated in the prisoner context if the sanction "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). When making this determination, the court compares the conditions that resulted from the administrative decision with the conditions that are an ordinary incident of prison life. *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997) (citing *Sandin*, 515 U.S. at 485-86).

In *Beverati*, the Fourth Circuit examined whether prisoners had a liberty interest when they were confined in administrative segregation for six months. *Id.* at 503-04. The prisoners in that case complained of many conditions that they were subjected to as a result of the administrative segregation:

> They claim that when they were initially placed in segregation, their cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, they assert, they were forced to use their clothing and shampoo to clean the cells. In addition,

> Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, [a prisoner] submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that the food was served in considerably smaller portions.

*Id.* at 504. The Fourth Circuit held that "although the conditions were more burdensome than those imposed on the general prison population, they were not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.*

Plaintiff's complaints in this case are similar to the prisoners' complaints in *Beverati*. Much like the prisoners in *Beverati* who were administratively segregated for six months and lost privileges, *id.* at 503-04, Plaintiff was administratively segregated for six months and lost privileges. (ECF No. 8, p. 2). Moreover, similar to the prisoners in *Beverati* who complained about being subjected to burdensome prison conditions as a result of their confinement, 120 F.3d at 504, Plaintiff complains of the following conditions of his confinement: (1) his dorm has very poor security; (2) he has been consuming high sodium meat and as a result is suffering from hypertension; (3) he has been denied medical treatment; (4) he could not exhaust administrative remedies; (5) he has witnessed officers spray inmates for arguing with the officers; (6) his cell has mold in it and he had to stay in a cell for approximately 24 hours with urine and feces on the floor; (7) the institution's "top tier-bottom tier policy" locks everyone in at 3 P.M. which hinders his ability to attend religious classes; (8) he has been denied access to the courts; (9) he cannot clean the living areas, showers, and toilets; (10) everyone is punished for one man's actions although there are cameras; (11) they are deprived movement on the hour; (12) they are deprived regular recreation; (13) the cells have no ventilation for when gas is sprayed; (14) they are fed

spoiled meat and old bread, and have to drink from a garbage can; and (15) his dorm is discriminated against. (ECF No. 10, pp. 3, 4, 5, 7). Although his complaints of the conditions of his confinement are many and are unfortunate, as the magistrate judge explained in the Report, Plaintiff provides no facts to indicate that his experience in lock up as a result of his disciplinary conviction is significantly different from his placement in a regular cell. *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) ("[C]hanges in a prisoners' location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate are contemplated by his original sentence to prison."). Accordingly, even though the conditions are more burdensome than those provided in the general population, "they [are] not so atypical that exposure to them for six months imposed a significant hardship in relation to the ordinary incidents of prison life." *Beverati*, 120 F.2d at 504.

In addition to being subjected to more burdensome conditions, Plaintiff argues that he faced an atypical hardship because his hardship petition to relocate closer to his family was denied. (ECF No. 10, p. 3). However, the fact that his hardship petition for relocation was denied does not implicate the Due Process Clause. "A liberty interest protected by the Fourteenth Amendment must amount to more than an abstract need or desire or a unilateral hope." *Gaston*, 946 F.2d at 344 (internal citations omitted). Therefore, "[i]n the absence of some entitlement, a fear or hope about a future discretionary decision is too speculative to give [a prisoner] a liberty interest." *Id.* "Rather, an individual claiming a protected interest must have a legitimate claim of entitlement to it." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). The United States Bureau of Prisons retains the discretion as to whether to grant a prisoner's

4

petition for relocation.² Therefore, Plaintiff did not have a legitimate claim of entitlement to a relocation, and, thus, the denial of his petition does not implicate the Due Process Clause.

In sum, the court finds that the Report's analysis is thorough and accurate and, therefore, adopts the Report and incorporates it herein in its entirety. It is therefore **ORDERED** that Plaintiff's Complaint is summarily **DISMISSED** without prejudice and without issuance and service of process. Further, it is ordered that the motions to amend the complaint (ECF No. 11) and for excusable neglect (ECF No. 12) are **DENIED** as moot.

**IT IS SO ORDERED.**

/s/ Timothy M. Cain
Timothy M. Cain
United States District Judge

Anderson, South Carolina
October 14, 2014

### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure, if applicable.

---

² *See, e.g.*, Fed. Bureau of Prisons, *Program Statement P5100.08: Inmate Security, Designation, and Custody Classification* at 78 (Sept. 12, 2006), *available at* http://www.bop.gov/policy/progstat/5100_008.pdf ("Nearer release transfers move the inmate closer to their legal residence or release destination, consistent with their security level. Inmates *may be* considered for a nearer release transfer only after serving 18 consecutive months of clear conduct in a general population." (emphasis added)).

5